UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

LATONYA WHITLEY,

                    Plaintiff,                          No.  13CV4126-LTS

        -v-

MONTEFIORE MEDICAL GROUP,

                    Defendant.

--------------------------------------------------------x

### MEMORANDUM OPINION AND ORDER

        Plaintiff Latonya Whitley ("Whitley" or "Plaintiff") brings this employment discrimination and civil rights action against Defendant Montefiore Medical Group ("Montefiore" or "Defendant"), seeking redress for alleged violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981 and the New York City Human Rights Law ("NYCHRL"). Plaintiff claims that she has suffered discrimination, harassment and retaliatory conduct at the hands of several Montefiore employees as a result of her race.  Montefiore now moves for summary judgment, arguing that certain of Plaintiff's claims are untimely and that she is unable to establish basic elements of the rest.  The Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1367.

        The Court has considered carefully the parties' submissions.  For the reasons stated below, Defendant's motion for summary judgment is granted in its entirety.

BACKGROUND[1]

Montefiore Medical Center is an integrated health care delivery system, with three main campuses in the Bronx, New York, along with a network of neighborhood health centers offering a wide range of home health care and rehabilitation services throughout the Bronx and Westchester.  (See Def. 56.1 St. ¶ 1.)  Defendant Montefiore is a division of Montefiore Medical Center that operates 23 health care centers.  (See id. ¶ 2.)  Montefiore has written policies prohibiting all forms of discrimination, harassment and retaliation, and trains all of its managers regarding those policies.  (Id. ¶¶ 3-4.)

Plaintiff Latonya Whitley, an African American woman, began working at Montefiore as a full time, at will, employee on October 3, 2005.  (Id. ¶¶ 7-9.)  From October 2005 through November 2011, Whitley worked at the Comprehensive Health Community Center ("CHCC") site in the Bronx.  (Id. ¶ 16.)  Lawrence Martin ("Martin") has been the administrative director of CHCC since November 2007.  (Id. ¶ 13.)  Whitley began her employment at Montefiore as a Patient Service Representative ("PSR"), a job that entailed registering patients, setting up appointments, answering telephones and handling charts and records.  (Id. ¶ 17.)  In 2008, a vacancy opened for a 5C Senior Clerk position in the OBGYN department at CHCC; the position was ultimately filled by Vialka Gonzalez, a former Montefiore employee who was returning to New York from Florida.  (Id. ¶ 18.)  After Vialka Gonzalez was appointed to the 5C Clerk position, Montefiore was served with a grievance by

---

[1]  The following facts are undisputed unless otherwise indicated.  Facts recited as undisputed are identified as such in the parties' statements pursuant to S.D.N.Y. Local Civil Rule 56.1 or drawn from evidence as to which there is no non-conclusory contrary factual proffer.  Citations to the parties' respective Local Civil Rule 56.1 Statements ("Def. 56.1 St." or "Pl. 56.1 St.") incorporate by reference the parties' citations to underlying evidentiary submissions.

1199 SEIU Healthcare Workers East (the "Union") contesting Gonzalez's placement as a violation of the collective bargaining agreement.  (Def. 56.1 St. ¶ 19.)  This grievance was filed on behalf of Whitley and three other PSRs.  (Id.)  The grievance was ultimately resolved pursuant to an agreement whereby Vialka Gonzalez was allowed to remain in her position and one of the grievants would be placed in a 5C Senior Clerk position in Adult Medicine.  (Id. ¶ 23.)  The 5C Adult Medicine position was ultimately given to Whitley.  (Id.)  Martin was not advised, and was otherwise unaware, that Whitley was disappointed that she had been placed in Adult Medicine rather than OBGYN, since she had been working in Adult Medicine since she began at CHCC.  (Id. ¶ 25.)[2]

In December 2010, Whitley was promoted to a position as an Administrative Supervisor, a non-union management position.  (Id. ¶¶ 27, 31.)  Whitley was given this promotion despite the fact that she lacked two recommended qualifications for the position – a bachelor's degree and ambulatory management experience.  (Id. ¶ 33.)  The promotion included a standard six-month probationary period.  (Id. ¶ 32.)  If Whitley did not pass this probationary period, her employment could be terminated or the probation period extended at the discretion of Montefiore.  (Id.)  Because of Whitley's lack of management experience, Martin advised her that the promotion was likely to present a "rough road," but he stated that he and Whitley's direct supervisor would be there to support her.  (Id. ¶ 35.)  Whitley believes that she never received any such support.  (Id. ¶ 36.)

As an Administrative Supervisor, Whitley was responsible for supervising PSRs

---

[2]   Although Whitley purports to contest the facts proffered by Montefiore in paragraphs 23 and 25 of its Rule 56.1 Statement, her counter-statements are not directly responsive and she has provided no citations to directly contradictory evidence.  (See Pl. 56.1 St. ¶¶ 23, 25.)  The Court therefore deems these facts undisputed.

in the Adult Medicine Department, assigning them tasks and making their schedules.  (Def. 56.1 St. ¶ 38.)  Prior to her promotion, Whitley had been a co-worker of the PSRs she was now responsible for supervising.  (Id. ¶ 40.)  Trevor Francis ("Francis") and Jose Gonzalez ("Gonzalez") were among those PSRs.  (Id. ¶ 41.)  Many of Whitley's former co-workers found it difficult to report to her as their supervisor and expressed dissatisfaction and jealousy over her promotion.  (Id. ¶ 42.)  Several of her reports regularly called out of work on short notice or came into work late.  (Id. ¶ 43.)  As a result, Whitley had multiple conversations with Samantha DeBurra ("DeBurra"), the Assistant Administrator of CHCC, about her direct reports not respecting her authority.  (Id. ¶¶ 14, 45.)[3]

At the time of Whitley's promotion to the management position, the CHCC was in the midst of ongoing physical renovations.  (Id. ¶ 49.)  Thus, Whitley was never provided with her own private office; rather, she was shown an office that she was told she would occupy once renovations were complete.  (Id. ¶ 50.)  Throughout her employment as Administrative Supervisor, Whitley had use of an office behind the front desk as well as one near the head

---

[3]     In an uncontroverted portion of her deposition testimony, Whitley indicated that certain subordinates – including Francis and Gonzalez – used profanity around her. (See Declaration of Marjorie Mesidor in Opposition to Motion for Summary Judgment, Ex. B, Docket Entry Nos. 45:2-6, Deposition of Latonya Whitley ("Pl. Dep.") at 49:7-56:3.)  Whitley claims that they often used words such as "shit, fuck, [and] bitch."  (Id. at 50:5-6.)  Whitley further claims that they used the word "nigger" regularly in her presence, primarily amongst each other, but at least once towards her when they called her "my nigga."  (Id. at 51:7-52:18.)  While Whitley claims that she complained about the conduct to DeBurra and that DeBurra announced that she would institute a "swear jar" monetary penalty system, and also alleges generally that she sent emails regarding the issue, DeBurra denies that Whitley ever complained about associates using the "N word" at CHCC.  (Def. 56.1 St. ¶ 147; Pl. 56.1 St. ¶¶ 146-49.)  Furthermore, Whitley did not complain to Rodriguez that her subordinates were using such language, and did not tell Rodriguez that she had complained to Martin or DeBurra about the use of such language.  (Def. 56.1 St. ¶¶ 150-51.)  Whitley's testimony regarding these alleged complaints put them in the context of insubordination.  (See Pl. Dep. at 47:9-54:18, 58:11-60:25.)

nurse, both of which had computers, printers and phones.  (Def. 56.1 St. ¶ 51.)  Although Whitley did not have a personal computer during this time, she was also able to use computers located in several other offices, and had access to conference rooms located beneath the Adult Medicine floor to the extent she wanted to meet with patients or staff in private.  (Id. ¶¶ 51-53.)[4] In order to assist Whitley in her new role, Montefiore sent her to classes on how to become an effective supervisor, leader and communicator.  (Id. ¶ 68.)  She received time off from work to attend these classes and did not have to pay for them.  (Id. ¶ 69.)

In late February or early March of 2011, Whitley had a PSR named Tiffany Williamson assist her in getting prescription eye drops from an onsite Montefiore doctor at CHCC.  (Id. ¶¶ 55-56.)  Whitley used Williamson's name and identity to get a prescription filled at the CHCC pharmacy for her own use, though she asserts that this was done under the supervision of a Montefiore doctor.  (Pl. 56.1 St. ¶ 57; Def. 56.1 St. ¶ 57.)  After being advised of this incident, DeBurra called Whitley to discuss the matter, at which time DeBurra informed Whitley that her conduct in obtaining the prescription was illegal.  (Def. 56.1 ¶ 60.)  DeBurra decided not to terminate Whitley at that time.  (Id. ¶ 62.)  Instead, DeBurra issued Whitley a "Final Notice in Lieu of Termination" which advised Whitley that she had engaged in "completely inappropriate behavior," that her decision was "gross misconduct and poor judgment," and warned that "[a]ny future actions of a similar nature [would] result in termination."  (Id. ¶¶ 62-64.)

On June 13, 2011, DeBurra extended Whitley's probation.  (Id. ¶ 72.)  Montefiore

---

[4]     Whitley again purports to dispute the facts proffered by Montefiore in paragraphs 51 through 53 of their Rule 56.1 Statement, but fails to make counter-statements that are directly responsive, and fails to identify contradictory evidence.  (See Pl. 56.1 St. ¶¶ 51-53.)

claims that this was done to "give [Whitley] more time to work on areas where she needed to improve, particularly her leadership skills and motivating her staff."  (Def. 56.1 St. ¶ 72.) Whitley, however, asserts her belief that her probation was extended "as a way to retaliate against her for complaints."  (Pl. 56.1 St. ¶ 72.)  On August 8, 2011, Whitley met with Martin and DeBurra in a conference room and was told that she would have to find a new position. (Def. 56.1 St. ¶ 79.)  Whitley was informed at that meeting that she was not being fired, but rather that her position was not working out and she should consider looking for a new one.  (Id. ¶ 80.)  She was asked by human resources employee Tisa Hall whether she would consider being placed back into a 5C position, but indicated that she would not agree to any such proposal.  (Id. ¶ 83.)

By August 2011, Jorge Rodriguez, Associate Vice President at Montefiore and Martin's supervisor, understood that Whitley would not pass her extended probationary period as an Administrative Supervisor, and offered to try to place her in a 4C position, which she declined.  (Id. ¶ 89.)  Whitley had previously complained to Rodriguez about the perceived lack of support she was receiving from Montefiore as well as the lack of respect she was receiving form her subordinates.  (Id. ¶ 84.)

On or about August 11, 2011, Whitley had advised Hall that she was having a panic attack, and she met with a doctor at Montefiore's Occupational Health Services ("OHS") to be evaluated.  (Id. ¶¶ 94-95.)  The doctor filled out a note stating that Whitley was to remain off duty until she was cleared to return to work by her primary care provider.  (Id. ¶ 95.)  At a follow-up visit on August 18, 2011, the OHS doctor extended Whitley's off-duty status until such time as she was cleared to return by her primary care provider.  (Id. ¶ 96.)  In late August, 2011, Whitley saw her psychiatrist, Dr. Anthony Stern.  (Id. ¶ 98.)  Dr. Stern advised that

Whitley was not yet ready to return to work, and that he would reevaluate her in September. (Def. 56.1 St. ¶ 98.)  Dr. Stern subsequently reevaluated Whitley on or about September 8, 2011, September 22, 2011, and October 25, 2011, extending her "out of work" status each time.  (Id. ¶¶ 99, 100, 103.)  On or about September 15, 2011, Whitley had a call with Rodriguez in which Rodriguez advised Whitley that, due to a hiring freeze at Montefiore, she would not be placed in another position at that time.  (Id. ¶ 92.)  Dr. Stern's internal notes regarding Whitley's October 25, 2011, visit include his recommendation that Whitley's out of work status be extended due to the hiring freeze at Montefiore, and Whitley testified at her deposition that Dr. Stern submitted notes on her behalf to help keep her out of work while Montefiore attempted to place her in a new position.  (Id. ¶¶ 104, 107.)  Whitley never returned to work at any time after August 12, 2011, yet she testified at her deposition that she was "ready, willing and able to work all the time."  (Id. ¶¶ 105-06.)

On August 26, 2011, Whitley filed online for unemployment benefits with the New York State Department of Labor (the "DOL").  (Id. ¶ 110.)  In her online application, Whitley indicated that she was "able and available to start work immediately."  (Id. ¶ 111.)  Although she represented to the DOL that she was able to work "immediately," she advised Montefiore at that time and thereafter, by way of letters from Dr. Stern, that she was unable to return to work.  (Id. ¶ 112.)[5]  Whitley also represented to the DOL that she lost her employment

---

[5]    Once again, Whitley purports to contest the facts proffered by Montefiore, yet fails to controvert these facts with relevant evidence.  (See Pl. 56.1 St. ¶ 112.)  Whitley's deposition testimony that "Dr. Stern was primarily concerned with the job freeze," in submitting his letters extending her out of work status does not controvert the fact that Dr. Stern was representing to Montefiore that Whitley was "not yet ready to return to work."  (See Declaration of Joseph Field in Support of Motion for Summary Judgment ("Field Decl."), Docket Entry No. 33-9, Ex. X, Letters from Dr. Stern.)

due to "lack of work," yet she had not been terminated by Montefiore at the time she filed for

unemployment benefits.  (Def. 56.1 St. ¶¶ 114-15.)[6]  Whitley testified at her deposition that she

recognized the inconsistency between the information that she had submitted to Montefiore and

the representations she had made to the DOL.  (Id. ¶ 113.)

In November 2011, Martin was advised by Montefiore's Human Resources

Department that Whitley had been receiving unemployment benefits while she was out on a

medical leave of absence and thus should be terminated.  (Id. ¶ 116.)  Whitley was informed of

her termination by a letter dated November 21, 2011, in which Martin indicated that her

application for unemployment benefits while she was out on medical leave was a terminable

offense.  (Id. ¶¶ 117-119.)  Montefiore maintains that "Whitley's application for and receipt of

unemployment benefits while she represented to Montefiore she was unable to work and needed

a medical leave of absence was the basis for Montefiore's decision to terminate her

employment."  (Id. ¶ 122.)

In or around November 2011, the DOL began an investigation into Whitley's

application for unemployment benefits.  (Id. ¶ 123.)  During the course of the investigation, the

investigator communicated with Dr. Stern, who advised her that he had been prepared to clear

Whitley to return to work once the hiring freeze at Montefiore was over.  (Id. ¶ 130.)  The DOL

eventually awarded Whitley unemployment benefits.  (Id. ¶ 131.)  While Montefiore objected to

the DOL's determination, it failed to send a representative to a hearing on the award, which was

ultimately upheld by an Administrative Law Judge.  (Id. ¶ 132.)  However, in late March or early

---

[6]     Whitley's deposition testimony indicating her belief that she was "effectively
terminated" does not controvert the fact that she had not, in fact, been terminated.
(See Pl. 56.1 St. ¶ 115; see also Declaration of Lawrence Martin in Support of
Motion for Summary Judgment ("Martin Decl."), Docket Entry No. 32 ¶ 11.)

April 2014, Whitley received a notice from the DOL to report for a meeting with a DOL

representative regarding her past receipt of unemployment benefits.  (Def. 56.1 St. ¶ 133.)  The

DOL later determined that Whitley had made willfully false statements to obtain benefits on

more than one occasion, and assessed her penalties representing overpaid benefits totaling over

$18,000.  (Id. ¶¶ 135-39.)[7]  Whitley has admitted that she was dishonest with Montefiore in

obtaining unemployment benefits from the DOL for the period of May 2010 through January

2011, which covered a period of time in which Plaintiff was actively working at Montefiore

following her return from maternity leave.  (Id. ¶¶ 142-43.)


<u>D</u>ISCUSSION

<u>Rule 56 Summary Judgment Standard</u>

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, summary

judgment is to be granted in favor of a moving party where that party can demonstrate "that there

is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law."  Fed. R. Civ. P. 56(a); <u>see</u> <u>also</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256 (1986).

Thus, a party that is unable to "make a showing sufficient to establish the existence of an

element essential to that party's case, and on which that party will bear the burden of proof at

trial" will not survive a Rule 56 motion.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).

The moving party bears the burden of demonstrating the absence of a material fact, and the court

must be able to find that, "'after drawing all reasonable inferences in favor of a non-movant, no

---

[7]     Whitley maintains that the overpayment penalties were not assessed for benefits
received during the period of time in which Plaintiff considers herself to have been
"terminated" by Montefiore, an assertion that appears to be borne out by the time
line cited by Montefiore.  (Pl. 56.1 St. ¶¶ 142-43.)

reasonable trier of fact could find in favor of that party.'"  Marvel Entertainment, Inc. v. Kellytoy (USA), Inc., 769 F. Supp. 2d 520, 523 (S.D.N.Y. 2011) (quoting Heublein v. United States, 996 F.2d 1455, 1461 (2d Cir. 1993)).  For the purposes of summary judgment motion practice, a fact is considered material "if it might affect the outcome of the suit under the governing law," and an issue of fact is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Holtz v. Rockefeller & Co. Inc., 258 F.3d 62, 69 (2d Cir. 2001) (internal quotation marks and citations omitted).  "[M]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist."  Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (internal quotation marks and citation omitted).  "As to issues on which the non-moving party bears the burden of proof, the moving party may simply point out the absence of evidence to support the nonmoving party's case."  Nora Beverages, Inc. v. Perrier Group of Am., Inc., 164 F.3d 736, 742 (2d Cir. 1998).

Whitley's Discrimination Claims: Causes of Action One, Two and Three

Whitley's first three Causes of Action assert discrimination claims based on race in violation of Title VII, 42 U.S.C. § 1981 and the New York City Human Rights Law.  In situations such as this, where the plaintiff has proffered no direct evidence of discrimination, courts apply the three-step burden-shifting analysis articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-03 (1973), in evaluating Title VII and Section 1981 claims.  See e.g., Terry v. Ashcroft, 336 F.3d 128, 141 (2d Cir. 2003); see also Pronin v. Raffi Custom Photo Lab, Inc., 383 F. Supp. 2d 628, 634 (S.D.N.Y. 2005) ("In the absence of direct evidence of discrimination, a plaintiff in an employment discrimination case usually relies on the three-step

McDonnell Douglas test.").  The McDonnell Douglas test requires a plaintiff to make out a

prima facie case of discrimination by demonstrating that: (1) she is a member of a protected

class; (2) she performed her job satisfactorily; (3) she suffered an adverse employment action;

and (4) the adverse employment action occurred under circumstances giving rise to an inference

of discrimination.  See e.g., Arnow v. Aeroflot Russian Airlines, 980 F. Supp. 2d 477, 483

(S.D.N.Y. 2013) (citing Stratton v. Dep't for Aging for N.Y.C., 132 F.3d 869, 879 (2d Cir.

1997)).  Once the plaintiff has established a prima facie case of discrimination, the burden shifts

to the defendant to proffer a legitimate, non-discriminatory reason for its action.  Stratton, 132

F.3d at 879.  If defendant is able to provide such a reason, the presumption of discrimination

raised by the prima facie case is rebutted, and "drops out of the picture," and the plaintiff must

show, on the basis of all of the evidence presented, that it is more likely than not that the

employer's decision was motivated by discrimination.  See id. (quoting St. Mary's Honor Center

v. Hicks, 509 U.S. 502, 510-11 (1993)).  "The ultimate burden of persuading the trier of fact that

the defendant intentionally discriminated against the plaintiff remains at all times with the

plaintiff."  Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981).  See also

Anderson v. State of New York, Office of Court of Admin. of Unified Court System, 614 F.

Supp. 2d 404, 425 (S.D.N.Y. 2009) (applying McDonnell Douglass test to Section 1981 claim;

Men of Color Helping All Soc., Inc. v. City of Buffalo, 529 F. App'x 20, 26 (2d Cir. 2013)

("Race discrimination claims under Title VII, NYHRL, and §§ 1981 and 1983 are analyzed

under the burden-shifting framework of McDonnell Douglas Corp. v. Green"); Davis v. Oyster

Bay-East, No. 03CV13720-SJF-JO, 2006 WL 657038, at *8 n.12 (E.D.N.Y. Mar. 9, 2006)

("discrimination claims under Title VII, [and] 42 U.S.C. § 1981 and 1983 . . . are analyzed

together, as the same analytic framework applies to each.").

The standard for NYCHRL claims is less stringent.  In order to "survive summary judgment, 'the plaintiff need only show that her employer treated her less well, at least in part for a discriminatory reason.'" Wilcox v. Cornell University, 986 F. Supp. 2d 281, 286 (S.D.N.Y. 2013) (quoting Mihalik v. Credit Agricole Cheuvreux North America, Inc., 715 F.3d 102, 110 n.8 (2d Cir. 2013).)  As under the McDonnell Douglas framework, an employer may present evidence of a legitimate, non-discriminatory reason for its actions, but summary judgment dismissing NYCHRL claims is only appropriate "if the record establishes as a matter of law that discrimination play[ed] no role in [the challenged] actions."  Mihalik, 715 F.3d at 110 n.8 (internal quotation marks and citations omitted).

It is undisputed that Whitley has demonstrated that she was a member of a protected group, as she is African American.  (See Def. 56.1 St. ¶ 7; Pl. 56.1 St. ¶ 7.) Furthermore, although there appears to be some disagreement as to whether Whitley was truly "qualified" for her position, it is not contested that she was promoted to the subject position of Administrative Supervisor (see Def. 56.1 St. ¶ 27; Pl. 56.1 St. ¶ 27) and neither side offers any legal argument with respect to her qualifications.  The Court, accordingly, turns to the question of whether Plaintiff's evidence demonstrates that she suffered any adverse employment action. Plaintiff argues that the adverse employment action element of her discrimination claim is met by: (1) the denial of a promotion in 2008; (2) the alleged failure by Montefiore to provide her with adequate support and training; and (3) her termination.  The Court examines each of these contentions in turn.

### 1.  2008 Denial of Promotion

Whitley claims that she was discriminated against because she was denied a promotion in 2008.  (See Complaint, Docket Entry No. 1 ¶ 11.)  Montefiore argues that any such

failure to promote claim is time-barred.  (See Defendant's Memorandum of Law in Support of

Its Motion for Summary Judgment ("Def. Memo"), Docket Entry No. 35 at p. 16.)  In response,

Whitley offers a one-sentence argument in which she asserts that her failure to promote claim is

not time-barred because it is "part and parcel of the racially hostile work environment Plaintiff

alleges she endured while employed by the Defendant."  (See Plaintiff's Memorandum of Law in

Opposition to Defendant's Motion for Summary Judgment ("Pl. Memo"), Docket Entry No. 44

at p. 10.)  Aside from the fact that Whitley's responsive argument conflates two separate causes

of action, it fails as a matter of law.

Title VII requires a plaintiff to file a charge of discrimination with the Equal

Employment Opportunity Commission ("EEOC") within 300 days of an unlawful employment

practice.  See 42 U.S.C. § 2000e-5(e)(1); see also National R.R. Passenger Corp. v. Morgan, 536

U.S. 101, 105-06 (2002).  "A discrete retaliatory or discriminatory act [such as an alleged failure

to promote] 'occurr[s]' on the day that it 'happen[s].'"  Morgan, 536 US at 110.  Thus, the statute

of limitations for a failure to promote claim runs from the date the promotion was actually

denied, even if this occurred within the larger context of an allegedly hostile work environment.

See id. at 111-12 ("We have repeatedly interpreted the term 'practice' to apply to a discrete act

or single 'occurrence,' even when it has a connection to other acts.").  Because Whitley filed her

EEOC charge on April 13, 2012 (see Field Decl., Ex. KK), any discrete Title VII claims arising

prior to May 17, 2011 – including the alleged 2008 failure to promote claim – are time-barred.

The statute of limitations governing Whitley's Section 1981 claims is four years.

See Jones v. R.R. Donnelley & Sons Company, 541 U.S. 369 (2004); see also Fernandez v. M &

L Milevoi Management, Inc., 357 F. Supp. 2d 644, 649 (E.D.N.Y. 2005) ("In Donnelley, the

Supreme Court decreed uniformity when it held that a Section 1981 claim is governed by the

four-year statute of limitations if it arose under a post-1990 Act of Congress.").[8]  The New York

City Administrative Code provides that the statute of limitations for claims arising under the

NYCHRL is three years.  See N.Y.C. Admin. Code § 8-502(d).  Whitley's Complaint in this

action was filed on June 14, 2013.  (See Docket Entry No. 1.)  Thus, all NYCHRL claims arising

prior to June 14, 2010 are time-barred, as are all Section 1981 claims arising prior to June 14,

2009.  Whitley's failure to promote claim, which arises from a 2008 employment decision, is

thus time-barred under all three statutory schemes.  The Court therefore grants Montefiore's

motion for summary judgment insofar as it seeks dismissal of Whitley's employment

discrimination claims under Title VII, Section 1981 and the NYCHRL that are based on her

failure to receive a promotion in 2008.

### 2.  Lack of Resources and Support

In the context of a Title VII claim, the Second Circuit "define[s] an adverse

employment action as a 'materially adverse change' in the terms and conditions of

employment."  Sanders v. New York City Human Resources Admin, 361 F.3d 749, 755 (2d Cir.

2004) (quoting Richardson v. New York State Dep't of Corr. Serv., 180 F.3d 426, 446 (2d Cir.

1999)).  "To be materially adverse, a change in working conditions must be 'more disruptive

than a mere inconvenience or an alteration of job responsibilities' . . .  Examples of such a

change include 'termination of employment, a demotion evidenced by a decrease in wage or

salary, a less distinguished title, a material loss of benefits, significantly diminished material

---

[8]        Section 1981 claims regarding the terms and conditions of employment are authorized
by the 1991 amendments to Section 1981.  See Fernandez, 357 F. Supp. 2d at 649 ("In
the specific case before it, the Supreme Court held that the employees' wrongful
termination, hostile work environment, and failure-to-transfer claims were governed
by the four-year statute of limitations because they were made possible by the 1991
amendments to Section 1981.").

responsibilities, or other indices . . . unique to a particular situation.'"   <u>Sanders</u>, 361 F.3d at 755

(quoting <u>Terry v. Ashcroft</u>, 336 F.3d 128, 138 (2d Cir. 2003).  Section 1981 claims are subject to

the same standard.  <u>See</u> e.g., <u>Henry v. NYC Health & Hosp. Corp.</u>, 18 F. Supp. 3d 396, 411

(S.D.N.Y. 2014).  To make out this prong of a claim under the NYCHRL, "a plaintiff must

simply show that she was treated differently from others in a way that was more than trivial,

insubstantial, or petty."  <u>Moore v. Metropolitan Transp. Authority</u>, 999 F. Supp. 2d 482, 501

(S.D.N.Y. 2013) (internal quotation marks and citation omitted).

   Whitley has failed to satisfy the adverse employment action or differential

treatment prong of the discrimination inquiry under any of these statutory schemes.  Although

Whitley generally asserts that she did not receive appropriate support to help with her transition

into a new position following her promotion, it is uncontested that Montefiore sent her to classes

on how to become an effective supervisor and leader, that she was given time off from work to

attend these classes and that she did not have to pay for them.  (Def. 56.1 St. ¶¶ 68-69.)  Whitley

admits these facts, and points to no conflicting evidence that might raise a material issue of fact.

Thus, Montefiore has proffered uncontroverted evidence demonstrating that Whitley did, in fact,

receive support and training upon her promotion.  Furthermore, Plaintiff has proffered no

evidence that any similarly-situated employee was treated differently.

   Whitley argues that she never received a personal office or computer and was

therefore "unable to succeed in her position in large part due to a lack of necessary resources."

(<u>See</u> Pl. Memo at p. 10.)  However, Montefiore's failure to provide Whitley with her own office

or computer does not rise to the level of an adverse employment action within the meaning of

either Title VII or Section 1981.  Indeed, Whitley has not proffered any evidence that

demonstrates that her failure to receive a computer or office was anything more than a "mere

inconvenience," and certainly does not point to any evidence demonstrating that Montefiore's failure to provide her with such resources was comparable to termination of employment, a demotion, a decrease in wage or salary, a less distinguished title, a material loss of benefits, or significantly diminished material responsibilities.  See Sanders 361 F.3d at 755; see also Berland-Starling v. Disney Pub. Worldwide, 166 F. Supp. 2d 820, 825 (S.D.N.Y. 2001) ("plaintiff claims that she was not provided with a new computer, but only received improvements to her existing computer and that she did not receive training on the so-called 'Oracle project.' These alleged[] . . . acts may have been unpleasant for plaintiff, but they do not amount to anything close to an adverse employment action"); Vito v. Bausch & Lomb, Inc., No. 07CV6500-CJS, 2010 WL 681230, at *13 (W.D.N.Y. Feb. 23, 2010) ("dissatisfaction with the size of her cubicle and the fact that she was not given a personal computer" are not enough for plaintiff to make out prima facie case of discrimination).  It is indisputable that computers were available for her use, as were rooms for private meetings.  (Def. 56.1 St. ¶¶ 52-53.)  Thus, Whitley has failed to demonstrate that she suffered an adverse employment action for the purposes of Title VII or Section 1981 analysis.  Nor has Whitley offered any evidence that her failure to receive an office or computer constituted "differential treatment" as required to make out a claim of discrimination under the NYCHRL.  See Moore 999 F. Supp. 2d at 501.[9]  Thus,

---

[9]      Indeed, it is undisputed that Whitley was shown an office that she was told she would occupy following the completion of renovations to the CHCC.  (See Def. 56.1 St. ¶ 50; Pl. 56.1 St. ¶ 50.)  To the extent that Whitley alleges that her replacement, a Hispanic woman named "Carmen," received an office prior to the completion of these renovations, thus giving rise to an inference of racial animus, Whitley offers only a statement made during her deposition as "evidence." However, Whitley's statement is premised on what another employee allegedly told her, and thus constitutes inadmissible hearsay.  See Kolesnikow v. Hudson Valley Hosp. Center, 622 F. Supp. 2d 98, 114 n.12 (S.D.N.Y. 2009).  Moreover, the Reply Declaration of Lawrence Martin proffers uncontroverted evidence that at the time "Carmen" began at CHCC, "the physical renovations that were being made while

because Whitley has failed to proffer evidence sufficient to meet her burden of demonstrating

that she suffered an adverse employment action or was subjected to differential treatment in

terms of the provision of resources or support, the Court grants Montefiore's motion for

summary judgment to the extent it seeks dismissal of her Title VII, Section 1981 and NYCHRL

discrimination claims insofar as they are based on the alleged failure to provide resources and

support.

### 3.  Whitley's Termination

It is uncontested that Whitley was terminated from her position.  (See Def. 56.1

St. ¶¶ 116-19; Pl. 56.1 St. ¶¶ 116-19.)  Termination is undoubtedly an "adverse employment

action" within the meaning of the McDonnell Douglas test.  See e.g., Miller v. Praxair, Inc., 408

F. App'x 408, 410 (2d Cir. 2010) ("typical examples of actionable adverse employment actions

include termination of employment") (internal quotation marks and citation omitted).  The Court

therefore turns to the question of whether Whitley has proffered evidence that her termination

occurred under circumstances giving rise to an inference of discrimination.  This inquiry is

contiguous with the Section 1981 question of whether Whitley has demonstrated that Montefiore

exhibited "an intent to discriminate on the basis of race."  See, e.g., Tovar v. KLM Royal Dutch

Airlines, No. 98CV5178, 2000 WL 1273841, at *5 (S.D.N.Y. Sept. 6, 2000).  Similarly, the

NYCHRL requires a demonstration that the complained of treatment was, at least in part, based

on race.  Williams v. Regus Management Group, LLC, 836 F. Supp. 2d 159, 172 (S.D.N.Y.

2011) (holding that, to make out a discrimination claim under NYCHRL, a plaintiff must

"demonstrate by a preponderance of the evidence that she has been treated less well than other

---

Ms. Whitley was working there were completed . . . As a result there was no
difficulty in providing ["Carmen"] with a private office."  (See Reply Declaration of
Lawrence Martin, Docket Entry No. 48 ¶ 4.)

employees due to unlawful discrimination") (internal citation omitted)).

Whitley has proffered no evidence that could support a rational inference of discrimination on the part of Montefiore. Indeed, in her brief, Whitley makes no argument, and points to no evidence, in support of the fourth step of the <u>McDonnell Douglas</u> analysis, arguing instead that Montefiore's proffered justification for her termination is merely pretextual. (<u>See</u> Pl. Memo at pp. 7-8.) In making her argument, Whitley glosses over the essential fourth step in the <u>prima</u> <u>facie</u> portion of the <u>McDonnell Douglas</u> analysis and, in so doing, fails to present any evidence indicating that her termination might have been the result of race-based animus. Her sole proffer is of her own conclusory deposition testimony in which she makes generalized complaints of bias toward Hispanics and unfair treatment. (<u>See</u> Pl. Dep. at, <u>e.g.</u>, 352-356.) Such evidence is insufficient to defeat a summary judgment motion. <u>See e.g.</u>, <u>Deebs v. Alstom</u> <u>Transp., Inc.</u>, 346 F. App'x 654, 656 (2d Cir. 2009) ("[T]he only 'evidence' cited in plaintiffs' brief is their own self-serving testimony . . . Such evidence is insufficient to defeat summary judgment"); <u>see also</u> <u>Pfunk v. Cohere Communications, LLC</u>, 73 F. Supp. 3d 175, 187 (S.D.N.Y. 2014) ("if the only evidence cited is self serving testimony and no attempt has been made to square that testimony with 'the hard evidence adduced during discovery,' such testimony is insufficient to defeat summary judgment") (citing <u>Deebs</u>, 346 F. App'x at 656). Thus, Whitley has failed to establish the fourth element of her <u>prima</u> <u>facie</u> case for the purposes of both Title VII and Section 1981 analysis.[10] On this record, the Court also finds that Whitley has presented

---

[10]     Moreover, Montefiore has proffered argument with respect to, and evidence of, its legitimate nondiscriminary reason for terminating Whitley; to wit, her filing for and collecting unemployment benefits while on medical leave from her position. (<u>See</u> Def. Memo at pp.13-15; Def. 56.1 St. ¶¶ 94-114, 116-20.) The Second Circuit has held that an employer's good faith belief that an employee has engaged in fraudulent or dishonest conduct is a valid, non-discriminatory basis for termination. <u>See</u>, <u>e.g.</u>, <u>Roge v. NYP Holdings, Inc.</u>, 257 F.3d 164, 169 (2d Cir. 2001) (holding

no evidence from which a rational juror could conclude that Montefiore "treated her less well, at least in part for a discriminatory reason," Mihalik, 715 F.3d at 110 n.8.  Her NYCHRL claim must therefore fail as well.  The Court therefore grants Montefiore's motion for summary judgment insofar as it seeks dismissal of Whitley's discrimination claims based on her termination.

For the foregoing reasons, the Court grants Montefiore's motion for summary judgment with respect to Whitley's Title VII, Section 1981 and NYCHRL discrimination claims and dismisses Causes of Action One, Two and Three in their entirety.

Whitley's Hostile Work Environment Claims: Causes of Action Four, Five and Six

Although styled as claims for "racial harassment," Whitley's Fourth, Fifth and Sixth Causes of action are appropriately construed as hostile work environment claims, in that they allege "constant and severe racial harassment [at work], including constant use of the 'N' word and severe hostility based on her race."  (See Complaint ¶¶ 24-31.)  Under Title VII, a hostile work environment claim requires a showing "(1) that the harassment was 'sufficiently

---

that employer's belief that employee had fraudulently obtained disability benefits "provided a legitimate non-discriminatory reason for terminating him.").  In response, Whitley argues that the existence of an email between Rodriguez and Martin, in which Rodriguez asks whether Montefiore can terminate Whitley upon her return from medical leave, proves that Montefiore's proffered legitimate reason is pretextual because the subject email predates Montefiore's knowledge of Whitley's receipt of any benefits.  (See Pl. Memo at pp. 8-9, Mesidor Decl. Exs. C-D.)  However, Whitley has proffered no evidence that Montefiore's proffered reason is "pretext masking intentional racial discrimination," as the law requires.  See Lloyd v. WABC-TV, 879 F. Supp. 394, 402 (S.D.N.Y. 1995) (emphasis added); see also Clough v. City of New Haven, 29 F. App'x 756, 759 (2d Cir. 2002).  Because Whitley has failed to offer any evidence that considerations of race were involved in Montefiore's decision to terminate her, her opposition to Montefiore's request for summary judgment on this issue must fail.

severe or pervasive to alter the conditions of the victim's employment and create an abusive

working environment,' and (2) that a specific basis exists for imputing the objectionable conduct

to the employer."  Alfano v. Costello, 294 F.3d 365, 373 (2d Cir. 2002) (quoting Perry v. Ethan

Allen, Inc., 115 F.3d 143, 149 (2d Cir. 1997).)  Courts analyzing hostile work environment

claims consider the totality of the circumstances, including "the frequency of the discriminatory

conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive

utterance; and whether it unreasonably interferes with an employee's work performance."  Harris

v. Forklift Systems, Inc., 510 U.S. 17, 23 (1993).  This inquiry has both objective and subjective

prongs: "the misconduct must be severe or pervasive enough to create an objectively hostile or

abusive work environment, and the victim must also subjectively perceive that environment to

be abusive."  Terry v. Ashcroft, 336 F.3d 128, 148 (2d Cir. 2003) (internal quotation marks and

citation omitted).  The standards for proving such a claim under Section 1981 are substantively

similar.  See Patterson v. County of Oneida, N.Y., 375 F.3d 206, 225 (2d Cir. 2004) ("most of

the standards applicable to the conduct alleged to constitute hostile work environment in

violation of Title VII are also applicable to [plaintiff's] employment claims under § 1981"); see

also Fincher v. Depository Trust and Clearing Corp., 604 F.3d 712, 723-24 (2d Cir. 2010) ("In

order to establish a hostile work environment claim under 42 U.S.C. § 1981, a plaintiff must

show that the workplace was so severely permeated with discriminatory intimidation, ridicule,

and insult that the terms and conditions of her employment were thereby altered") (internal

quotation marks and citation omitted).

    "The standard for maintaining a hostile work environment claim is lower under

the NYCHRL."  Bermudez v. City of New York, 783 F. Supp. 2d 560, 579 (S.D.N.Y. 2011).

The NYCHRL imposes liability for harassing conduct that does not qualify as severe or

pervasive.  Bermudez, 783 F. Supp. 2d at 579.  To survive summary judgment, a plaintiff need only proffer evidence of the existence of unwanted race-based conduct, as liability under the NYCHRL is determined by the existence of unequal treatment.  Id.  "Petty, slight or trivial inconveniences," however, are not actionable.  Id.  (internal quotation marks and citations omitted).  While the standard is less severe, the NYCHRL is not meant to operate as a general civility code.  See Kaur v. New York City Health and Hospitals Corp., 688 F. Supp. 2d 317, 340 (S.D.N.Y. 2010).

Whitley's hostile work environment claim appears to rest entirely upon her allegations that her subordinates Francis and Gonzalez, who were persons of color, used profanity and the "N word" in her presence and at least once to address her, and that management's response to the conduct consisted solely of a remark indicating that a "swear jar" would be established.  (See at Pl. Dep. at 51:7-52:18; Pl. 56.1 St. ¶¶ 146-49.)  The general use of profanity, when unconnected to hostility based on a protected characteristic of a plaintiff, will not, however, support a Title VII hostile work environment claim.  See Brown v. Henderson, 257 F.3d 246, 252 (2d Cir. 2001) ("It is axiomatic that mistreatment at work, whether through subjection to a hostile environment or through such concrete deprivations as being fired or being denied a promotion, is actionable under Title VII only when it occurs because of an employee's . . . protected characteristic.").  Indeed, "[e]ven when a plaintiff establishes that she was exposed to an objectively and subjectively hostile work environment, she will not have a claim . . . unless she can also demonstrate that the hostile work environment was caused by animus towards her as a result of her membership in a protected class."  Bermudez, 783 F. Supp. 2d at 578 (internal quotation marks and citation omitted).  Thus, Francis and Gonzalez's general use of profanity is insufficient to establish a basis for a viable hostile work environment claim.

Whitley argues that the employees' use of the "N word" in particular, while speaking with each other, and, at least once in speaking with Plaintiff, created a hostile work environment. This argument falls short of the requisite demonstration of race-based animus. While it is true that courts have recognized that the use of that particular word standing alone may establish a hostile work environment (see e.g., Rogers v. Western-Southern Life Ins. Co., 12 F.3d 668, 675 (7th Cir. 1993) ("no single act can more quickly alter the conditions of employment and create an abusive working environment than the use of an unambiguously racial epithet such as 'nigger' by a supervisor in the presence of his subordinates")), the context presented by Plaintiff's evidentiary proffers is not one of racial hostility. Rather, Whitley's alleged complaints to DeBurra and her account of the use of the word depict an atmosphere of excessive interpersonal familiarity with, and insubordination toward, a former co-worker who was now tasked with supervising vulgar employees.[11] Whitley's failure to demonstrate race-based hostility similarly dooms her hostile work environment claim under the NYCHRL.

The Court therefore grants Montefiore's motion for summary judgment with respect to Whitley's Title VII, Section 1981 and NYCHRL hostile work environment claims and dismisses Causes of Action Four, Five and Six in their entirety.

---

[11]     Despite the arguments Whitley currently presses in her brief, it is clear from the transcript of her deposition testimony that she subjectively interpreted the use of this language as a demonstration of insubordination, rather than a race-based affront, at the time she allegedly made her complaints. (See Pl. Dep. at 47:9-54:18, 58:11-60:25.) The Court thus finds that, based on the record before it, no rational finder of fact could conclude that Whitley has established that Francis' and Gonzalez's use of the "N word" was objectively or subjectively hostile. This is fatal to her hostile work environment claim.

Whitley's Retaliation Claims: Causes of Action Seven, Eight and Nine

"In order to establish a prima facie case for retaliation under Title VII, Plaintiff must satisfy four elements: 1) [she] engaged in a protected activity, 2) Defendants knew of the protected activity, 3) Defendants took adverse action against Plaintiff, and 4) a causal connection existed between the protected activity and the adverse employment action."  Cretella v. Liriano, 633 F. Supp. 2d 54, 74 (S.D.N.Y. 2009) (citing Kessler v. Westchester County Dept. of Soc. Servs., 461 F.3d 199, 205–06 (2d Cir. 2006).)  The same standard applies to retaliation claims brought under Section 1981.  See Little v. Northeast Utilities Service Co., 299 F. App'x 50, 52 (2d Cir. 2008).  The trial court's role in evaluating a retaliation claim on summary judgment is to determine whether the proffered admissible evidence would be sufficient to permit a rational finder of fact to infer a retaliatory motive.  See Hicks v. Baines, 593 F.3d 159, 164 (2d Cir. 2010).  Furthermore, the Supreme Court has held that "Title VII retaliation claims must be proved according to traditional principles of but-for causation . . . [which] requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer."  University of Texas Southwestern Medical Center v. Nassar, 133 S. Ct. 2517, 2533 (2013).  "To establish a retaliation claim under the NYCHRL, a plaintiff must prove that: (1) she engaged in a protected activity; (2) her employer was aware that she participated in such activity; (3) she suffered an action that would be reasonably likely to deter a person from engaging in the protected activity; and (4) there is a causal connection between the protected activity and the adverse action."  Roberts v. United Parcel Service, Inc., No. 13CV6161-JBW, 2015 WL 4509994, at *21 (E.D.N.Y. July 27, 2015); see also Mihalik, 715 F.3d at 112, 116.

With respect to the first prong of the inquiry, "the term 'protected activity' refers

to action taken to protest or oppose statutorily prohibited discrimination." Wimes v. Health, 157

F. App'x 327, 328 (2d Cir. 2005) (internal quotation marks and citation omitted).  This requires

that a plaintiff demonstrate that she has asserted a claim of discrimination based on her status as

a member of a protected category. See e.g., McDowell v. T-Mobile USA, Inc., 307 F. App'x

531, 534 (2d Cir. 2009).  A generalized complaint about perceived mistreatment without a

specific connection to discrimination based on membership in a protected class is insufficient to

establish a protected activity.  See e.g., Mayling Tu v. OppenheimerFunds, Inc., No. 10CV4971-

PKC, 2012 WL 516837, at *9-10 (S.D.N.Y. Feb. 16, 2012).

   Whitley's claims again fail.  She has proffered no evidence demonstrating that

she engaged in a protected activity.  While Whitley testified at her deposition that she

complained to DeBurra and other supervisors about the behavior of Francis and Gonzalez, she

clearly indicated that her complaints focused on their insubordination and general

demonstrations of disrespect, rather than on any alleged racial hostility.  (See Pl. Dep. 59:15-19

("As I stated before, I would go to my superior, Ms. DeBurro [sic], in reference to these two

gentlemen as far as them being disciplined, even removed off of my unit for being

insubordinate"; 62:20-63:4 ("Q: And did you have any conversations with Ms. Crisp about your

issues with these associates?  A: Yes, I did.  Q: And what do you recall about those

conversations?  A: Telling her how disrespectful they were and how they were disrespectful,

blatantly disrespectful in front of patients.").)  Whitley has pointed to no evidence demonstrating

that she asserted a claim of illegal discrimination based on her status as a member of a protected

group and thus cannot establish that she engaged in a "protected activity" for the purposes of

making out a prima facie case of retaliation under Title VII, Section 1981 or the NYCHRL.

   Even if Whitley were able to demonstrate that she had engaged in a protected

activity, her claim must fail because she has proffered no evidence demonstrating a causal link between any adverse action she may have suffered and the alleged protected activity.  Any attempt to link the alleged denial of support and resources to her complaints regarding Francis and Gonzalez must fail, because the record is clear that she was never provided with an office or dedicated computer resources, and her allegations regarding failure to provide support generally are not related in any temporal manner to her alleged complaints regarding Francis and Gonzales.  Adverse actions that do not follow allegedly protected activities do not support claims of retaliation.  See e.g., McAllister v. Queens Borough Pub. Lib., 309 F. App'x 457, 459 (2d Cir. 2009).

As the Court has explained, the only adverse action that Whitley has proved she suffered is her termination.  She has not proffered any proper evidentiary basis for an inference of a causal link to the termination of her employment.  Because Whitley has failed to proffer any direct evidence" of retaliatory animus, she must rely on circumstantial evidence; namely the temporal proximity between the alleged protected activity and retaliatory adverse action.  See e.g., Dixon v. International Federation of Accountants, 416 F. App'x 107, 110 (2d Cir. 2011).  It is undisputed that Whitley went on medical leave and did not return to work after August 12, 2011.  (Def. 56.1 St. ¶ 105, Pl. 56.1 St. ¶ 105.)  Whitley's termination occurred on November 21, 2011.  (Def. 56.1 St. ¶ 117; Pl. 56.1 St. ¶ 117.)  Thus, it is undisputed that there was a three month gap between the latest point at which Whitley could have engaged in any protected activity (August 12, 2011) and her termination (November 21, 2011).  Such a gap is, as a matter of law, insufficient to support an inference of causation for the purposes of a retaliation analysis. See Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001) (holding that three month span between protected act and adverse action is insufficient to meet the "very close" proximity

requirement); see also Hollander v. American Cyanamid Co., 895 F.2d 80, 85 (2d Cir. 1990)

(same); Ponticelli v. Zurich American Ins. Group, 16 F. Supp. 2d 414, 436 (S.D.N.Y. 1998)

(period of two-and-a-half months is "hardly the close proximity of time" contemplated to allow a

plaintiff to establish the causal nexus element of a retaliation claim).  Thus, because Whitley

cannot, as a matter of law, demonstrate a causal nexus between her termination and any alleged

protected acts she may have engaged in while at Montefiore, her retaliation claims under Title

VII, Section 1981 and the NYCHRL must fail.  The Court therefore grants Montefiore's motion

for summary judgment insofar as it seeks dismissal of Causes of Action Seven, Eight and Nine.


CONCLUSION

          For the foregoing reasons, Montefiore's motion for summary judgment is granted

in its entirety.  This Memorandum Opinion and Order resolves Docket Entry Number 30.  The

Clerk of Court is respectfully requested to enter judgment in Defendant's favor and close this

case.

          SO ORDERED.

Dated: New York, New York
          March 30, 2016


                                   /s/ Laura Taylor Swain
                                  LAURA TAYLOR SWAIN
                                  United States District Judge